Where the right to change the beneficiary has been reserved in a life insurance policy, the beneficiary named has but a mere expectancy with no vested right or interest during the lifetime of the insured: Riley v. Wirth, 313 Pa. 362, 367; Irving Bank v. Alexander, 280 Pa. 466, 470; Weil v. Marquis,256 Pa. 608, 614; 37 C. J. 579, section 345. It has been held that a beneficiary who has but a mere expectancy cannot assign or transfer such expectancy *Page 372 
during the life of the insured so as to preclude the latter's estate from claiming under the terms of the policy: Hicks v. Life Ins. Co., 166 Iowa 532. In that case, under a policy reserving the right to change the beneficiary, while the insured was insane, the beneficiary (his wife), with the joinder of the insane spouse, attempted to surrender or assign the policy to the company. It was held that she had no power to assign, transfer or do any act that would defeat the insured or his estate of his rights under the policy. She had no right that was transferable, and, by her transfer, she was estopped from making a claim under the policy in her own right; her act had no effect on his interest in the policy as the husband's joinder was void; his estate was entitled to its proceeds. The wife's act was equivalent to her rejection of the designation as beneficiary, and, as the insured alone had the right to designate beneficiaries, her attempt to exercise his right by assigning to the company was of no effect.
Where, however, the designation of the beneficiary in the policy is absolute and unconditional because the right to change the beneficiary is not expressly reserved to the insured, the beneficiary has a vested interest in the policy and cannot be deprived of its proceeds by anything the insured may do without the beneficiary's consent. This right is subject, however, to the terms and conditions of the policy: Joyce on Insurance, 2d ed., volume 2, section 730a, 731; Smith v. Metropolitan Life Ins. Co., 222 Pa. 226; Schuberth v. Prudential Ins. Co., 86 Pa. Super. 80. In Smith v. Metropolitan Life Ins. Co., supra, the insured designated his wife as beneficiary. She died before the insured. He then substituted his daughter. In determining the effect of this act, the court held that the wife as beneficiary was to receive the proceeds of the policy as a gift, contingent on her surviving the insured; but as she died first, the gift was not complete, his intention was incapable of fulfillment, and the court could not supply any other intent than that which the *Page 373 
donor himself expressed, namely, to give the proceeds to his daughter. The wife had a vested interest subject to divestment on her death before that of her husband.
In Anderson's Est., 85 Pa. 202, the policy was payable to A, her executors, administrators or assigns. A predeceased the insured. In a contest over the fund it was held that A's estate, through naming "executors, administrators or assigns," was entitled to the proceeds of the policy. In Entwistle v. Travelers Ins. Co., 202 Pa. 141, the policy was made payable to a wife, but in case of her death before that of the insured, then to her children. The insured and his wife assigned the policy, but we held that this joint act could not cut off the interest of the children named in the beneficiary clause; their interest as well as that of the wife was vested; both interests were subject to divestment and could be defeated, but one could not destroy the other before the death of the insured.
In Brown's App., 125 Pa. 303, the beneficiaries were the same as in Entwistle v. Travelers Ins. Co., supra. The wife assigned her interest and died before the insured; we held her assignee was not entitled to recover as against children named as beneficiaries in such an event. These cases indicate the vested character of the interest of the beneficiaries in the policies where the right to revoke is not reserved, and that to make a valid assignment of the benefits thereunder all the beneficiaries named must act.
While it has been stated that the real owner of the policy is the irrevocable beneficiary, there are limitations and contingencies imposed on that ownership. These are found in the law and in the terms of the policy. There is no legal obligation on the insured to keep the policy alive; that is a voluntary act; and the beneficiary must, under the law, survive the insured. Furthermore, the terms of the policy may limit or destroy the vested character of the interest. *Page 374 
The policy in this case insured Randall in the sum of $5,000 payable on his death to "his wife . . . her executors, administrators and assigns." The designation was irrevocable. The insured borrowed $1,850 from appellee, assigning the policy as security. Thereafter, on October 22, 1930, when a premium was due, the cash surrender value of the policy was paid to Randall and his wife, the beneficiary named therein. As stated by the court below, "she released to the defendant her prospective right of action upon the policy." From the statement and argument, it appears, plaintiff in effect assigned or released her interest in the proceeds of the policy to the company. On that date, October 22d, Randall, the insured, though signing the release and surrender, was insane and incompetent to enter into any contract. He died shortly thereafter, and his wife made another assignment, as beneficiary, to the present plaintiff who instituted this action on behalf of the insured's estate. It is contended by appellant that the insured has a vested interest in the policy which could not be destroyed by his wife, and that the release or assignment given by the beneficiary operated only on her individual right but not on any right that the insured's estate possessed; her assignment should be treated as though the wife had disqualified herself from taking under the policy, as in De Zotell v. Mut. Life Ins. Co., 60 S.D. 532, 245 N.W. 58; therefore, the law will not permit the claim to be lost but will raise a beneficiary, the personal representatives of the deceased, to take under the policy for the insured's estate.
Having in mind the rules governing policies of this character, we consider the terms of the policy itself. Undoubtedly the interest of the deceased's wife as beneficiary was vested. Under its terms she could assign that interest to any one without the joinder of her husband. The policy so stated, and she could dispose of it by will or it would pass under the intestate laws. The proceeds of the policy were to be paid to her or her assigns. The policy contained no limitation, reservation or exception *Page 375 
to this broad power. It constituted Mrs. Randall and her estate sole owners of the benefits under the terms contained in the policy. But it was provided in that contract that such ownership was subject to the "provisions, requirements and benefits" stated on the back of the policy.
Turning to them, we find that the insured could, without theconsent of the beneficiary, surrender the policy to the company and receive its cash surrender value; could borrow on the policy from the company, and assign the policy to it as security. He could exercise any one of five options as to the surplus that might be apportioned to the policy when it was fully paid. These things were within the insured's sole and exclusive province, and the vested character of the beneficiary's interest was limited by and subject to the exercise by the insured of any of the rights so granted by the contract. No power was given the beneficiary to surrender or cancel this policy without the assent of the insured, nor could she receive from the company any money on account of these provisions while insured was living. Any attempt to do so acted upon by the company would be without effect on the insured's right. The beneficiary could, under the beneficiary clause, assign her vested interest in the proceeds payable after insured's death, but this right has no relation to the provisions of the policy giving the insured the right to take out the money he paid on the policy, and cancel it. In this case, the act of the insured while he was insane was of no validity. His surrender was of no effect and had he become possessed of his faculties, he could have required the company to return the policy to him, and have forced them to make good any payments made under such illegal acts; but the insured did not regain his mental faculties. He died while insane, and the beneficiary who had the right to assign (and release) under the terms of the policy, did so with her interest, which, at insured's death, became a full incontestable right in the assignee. Her release or assignment operated *Page 376 
to transfer to the company all the right to benefits under the terms of the policy. She as beneficiary could have assigned this same interest in the policy to a third person, and when the insured died, as here, the assignee could have collected the entire proceeds. It may be that in her assignment to a third person without the consent of the insured, such assignee might not get a very valuable right, for the insured could exercise his right to surrender the policy and receive its value, or he could default in payments, either, in effect, cancelling the policy. It must be understood that as long as the insured is in life, what he has paid on the policy is within his exclusive control.* It is only at his death that the benefits are valuable, and though he may in his contract name a given party as the unconditional owner of the benefit at his death, and that beneficiary may assign that right, it is done subject to the right of the insured to cause or permit the policy to lapse. Here the beneficiary, in fact, assigned her interest under the terms of the policy while it was of full value, and that interest which she assigned or released was her right to all the benefits thereunder. This she had a perfect right to do, and the insured having died without regaining his faculties or, had he been compus mentis, without having attempted to exercise any of the rights granted by the policy, the action of the beneficiary is valid, and the insurance company is entitled to the benefit of the assignment or surrender.
Judgment affirmed.
* This statement is subject to the Act of May 17, 1919, P. L. 207, and the Act of June 28, 1923, P. L. 884. See Irving Bank v. Alexander, 280 Pa. 466. *Page 377