PENNSYLVANIA CO. FOR INSURANCES ON LIVES AND GRANTING ANNUITIES et al. v. COMMISSIONER OF INTERNAL REVENUE.*

No. 5748.

Circuit Court of Appeals, Third Circuit.

Aug. 8, 1935.

THOMPSON, C. J., dissenting.

Joseph A. Lamorelle, of Philadelphia, Pa. (Saul, Ewing, Remick & Saul, of Philadelphia, Pa., of counsel), for petitioners.

Frank J. Wideman, Asst. Atty. Gen., and Norman D. Keller and Joseph M.

*Writ of certiorari denied 56 S. Ct. 310, 80 L. Ed. ——.

Jones, Sp. Assts. to Atty. Gen., for respondent.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

BUFFINGTON, Circuit Judge.

This case involves five insurance policies on the life of J. D. C. Henderson, deceased, in which his wife was named beneficiary. The policies are designated in the opinion of the Tax Board as Nos. 15, 16, 17, 18, and 20. The decedent's executors contend the proceeds of the policies should not be included in his estate because, as they allege, the decedent, at the time of his death and prior thereto, had no interest in or control of any kind over the policies, and therefore the proceeds of the policies are not part of his estate. The taxing authorities contend the policies gave the decedent the right to borrow on the policies and also surrender the same for their cash value, and that therefore the policies were, and the Tax Board so held, a part of decedent's estate. It will thus be seen that the case turns on the terms of the policies. After due consideration, we have reached the conclusion that the contention of the executors is in accord with the facts and the order of the Tax Board to the contrary was error. Our reasons for so holding we now state.

Referring to No. 15, we note that the decedent named his wife as its beneficiary and reserved no power to change the beneficiary. In such case the wife acquired a vested interest in the policy. The law to that effect is summarized in Schuberth v. Prudential Insurance Co., 86 Pa. Super. 80, as follows: "The appellant has cited a number of cases which clearly show that the beneficiary has a vested interest in the policy unless the power to change is reserved by the terms of the contract for that purpose. The appellee does not dispute this statement and it is well supported by authority, Cooley's Briefs on the Law of Insurance, volume 4, p. 3753."

The late Judge McPherson, a former member of this circuit and a judge notable for his views on insurance law, while acting as a Pennsylvania state judge, in Jones v. Jones, 23 Pa. Co. Ct. R. 254, held: "We think, however, that the weight of authority supports the position that if A. takes out a policy of insurance on his own life for the express benefit of B., and does not reserve the right to change the beneficiary he cannot afterwards do so without B.'s consent. He has created a trust in B.'s favor and although its peculiar nature may allow him to destroy it by refusing to pay the premium as it becomes due he cannot as long as the trust is alive pay C. in the place of B. unless the latter agrees to the change. Since the delivery of the policy to B. is not necessary, nothing save continued payment of the premium remains to be done; the trust is otherwise complete, and the settlor has finally parted with the power to change the cestui que trust according to his own single will."

Seeing then the wife was the owner of a vested interest in this policy, we turn to the question of the construction of the provisions of the policy with reference to an exercise by the insured to surrender for cash or borrow money from the company. Were these rights which could be exercised by the insured alone, or was the consent of his beneficiary necessary? In that regard the policy provides: "In lieu of said paid-up policy, the Company will, on surrender as aforesaid within thirty days from the date of lapse, pay the cash surrender value named in the table of values below." For an explanation of the provision "on surrender as aforesaid," we turn to the preceding clause which provides for a surrender of the policy and the grant of paid-up insurance and find that such action will be taken "upon written application by the owner of this policy and the legal surrender of all claims thereunder." Assuredly, the beneficiary, who was the owner of a vested right in the policy, was a person whose consent was necessary if the decedent had sought to change his policy to paid up insurance, and equally so if he had sought to surrender the policy for a cash payment. By the same force of reason he must have had the joinder consent of his wife to constitute a "satisfactory assignment as collateral security" if he was to obtain a loan on the policy from the company. From the above, we are clear that the policy was here using, not restricted words and terms applicable only to the insured, but inclusive terms to cover any one who had a vested interest in the policy. In view of these facts, we are of opinion the estate of the decedent had no interest in this policy at the date of his death.

Policy No. 16 named the insured's wife as its beneficiary and there was no reservation of a right to change. Under the authorities stated, she was the owner of a vested interest and the policy contained no authorization of the insured to borrow money thereon. While it did give a restricted power to the insured to take a surrender value thereon during certain limited periods following each five-year period of its life, that unused right expired on September 18, 1924, with the result that neither when he died on February 3, 1926, nor at any time between September 18, 1924, and February 3, 1926 had the insured any money interest in the policy.

Without reciting details of policy No. 17, we note it provided for no change of beneficiary and that "the owner" shall have the right to surrender it "for cash surrender value." In our view, the wife beneficiary having a vested ownership in the policy, she was included in the word "owner" and the policy could not be surrendered without her consent. Moreover, the acts of the parties were in accord with this view, for when certain terms of this policy were canceled on March 16, 1912, and new ones substituted therefor, both the insured and the wife beneficiary executed the release. Being of opinion the insured could not change the beneficiary, surrender the policy for cash, or obtain loans thereon without consent of the beneficiary, it follows that his estate acquired no interest in the policy on his death.

As to policies Nos. 18 and 20, the wife was named as the beneficiary and no provision was made for a change. The policies gave the insured the right, at the end of the policies' tontine period of twenty years, of withdrawing the accumulated surplus apportioned to these policies. This option he exercised in 1913, but, other than the above, the policies gave him no right to surrender them for cash or to obtain loans thereon. Such being the case, it follows that nothing passed to the decedent's estate when he died ten years later, but the proceeds were properly paid by the insurance companies to his wife.

After full consideration of the above and all questions raised in the case, we are of opinion the Tax Board was in error in its holdings against the taxpayer, and its action is vacated.

THOMPSON, Circuit Judge (dissenting).

I am constrained to dissent from the majority opinion. Section 302 (g) of the Revenue Act of 1924 (26 USCA § 1094 note) provides:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— * * *

"(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life."

This act of Congress imposes a tax on the transmission of property rights through the death of the assured. The act does not impose a direct tax upon the life insurance policies but upon the privilege of transferring property of the decedent at and by his death. It is immaterial, therefore, whether or not the beneficiary had a vested interest in the policies during her husband's lifetime. The tax is imposed, not upon that interest, but upon the transfer, which does not become effective until the occurrence of a single contingency, the death of the assured. My view is that the above-quoted act is applicable to the situation in the instant case; that, even though, under the law of Pennsylvania, the beneficiary had a vested interest in the policy during the assured's lifetime, the tax is valid as a tax upon the transmission of property rights under the policies, arising by reason of, and at the time of, the death of the assured. Chase National Bank v. United States, 278 U. S. 327, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388.

I am of the opinion that the decree of the Board of Tax Appeals should be affirmed.